This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-36722**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ANTHONY BACA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Fred Van Soelen, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Lauren J. Wolongevicz, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**IVES, Judge.**

**{1}** Defendant Anthony Baca was convicted of possessing methamphetamine, NMSA 1978, Section 30-31-23(E) (2011, amended 2019);[1] possessing drug paraphernalia, NMSA 1978, Section 30-31-25.1(A) (2001, amended 2019);[2] resisting or

---

1 All references to Section 30-31-23(E) are to the 2011 version, which was in effect at the time of Defendant's trial.
2 All references to Section 30-31-25.1(A) are to the 2001 version, which was in effect at the time of Defendant's trial.

evading an officer, NMSA 1978, Section 30-22-1(B) (1981); and assault on a peace officer, NMSA 1978, Section 30-22-21 (1971). He appeals only his drug and paraphernalia possession convictions, arguing that (1) the district court erroneously denied his motion to suppress and (2) principles of double jeopardy prohibit him from being convicted for possessing both drugs and paraphernalia under the facts of this case. Because we disagree with Defendant's first point but agree with his second, we affirm his conviction for possessing methamphetamine and remand his case to the district court to vacate his conviction and sentence for possessing paraphernalia.

## DISCUSSION[3]

### I.   The District Court Did Not Err By Denying the Motion to Suppress

### A.   Standard of Review

**{2}**   Our "review of a district court's decision regarding a motion to suppress evidence involves mixed questions of fact and law." *State v. Funderburg*, 2008-NMSC-026, ¶ 10, 144 N.M. 37, 183 P.3d 922 (internal quotation marks and citation omitted). Because neither party challenges the district court's findings of fact, we review only the legal conclusions the district court drew in denying Defendant's motion to suppress. *State v. Morales*, 2005-NMCA-027, ¶ 8, 137 N.M. 73, 107 P.3d 513. We "review the entire record to determine whether there was sufficient evidence to support the [district] court's denial of the motion to suppress." *State v. Monafo*, 2016-NMCA-092, ¶ 10, 384 P.3d 134 (internal quotation marks and citation omitted). Our task is to review the application of the law to the unchallenged facts, "making a de novo determination of the constitutional reasonableness of a search or seizure." *State v. Olson*, 2012-NMSC-035, ¶ 9, 285 P.3d 1066 (internal quotation marks and citation omitted).

### B.   Analysis

**{3}**   Defendant argues that the district court erroneously denied his motion to suppress the methamphetamine and other evidence seized incident to his arrest because the officer detained him without reasonable suspicion to believe he had committed a crime. The State contends that the officer had reasonable suspicion. In the alternative, the State argues even if there was not reasonable suspicion, the exclusionary rule does not apply because the seizure of evidence was attenuated from Defendant's detention. Assuming without deciding that the officer lacked reasonable suspicion to detain Defendant, we agree with the State's alternative argument regarding attenuation. Specifically, we conclude that (1) the Fourth Amendment of the United States Constitution does not require suppression because, under United States Supreme Court precedent, the pre-existing warrant for Defendant's arrest broke the chain of causation between the detention and the search that revealed the evidence and (2) Article II, Section 10 of the New Mexico Constitution does not require suppression because, under New Mexico Supreme Court precedent, Defendant's

---

3Because the parties are familiar with the factual background, this memorandum opinion does not include a background section. We describe the pertinent facts in the discussion section.

commission of crimes after he was detained but before the drugs and paraphernalia were seized broke the chain of causation. We explain the reasons for each conclusion in turn.

**1.      Fourth Amendment of the United States Constitution**

**{4}**      We see no meaningful distinction between Defendant's case and *Utah v. Strieff*, __ U.S. __, 136 S. Ct. 2056, 2061 (2016), in which the United States Supreme Court declined to apply the exclusionary rule based on the attenuation doctrine when the officer discovered a pre-existing warrant for the defendant's arrest after detaining him but before searching him. The Court concluded that, under the Fourth Amendment, the attenuation doctrine applies when the intervening circumstance is "a valid, pre-existing, and untainted arrest warrant." *Id.* 2061-62, *see also State v. Edwards*, 2019-NMCA-070, ¶ 1, 452 P.3d 413 (applying *Strieff*). *Strieff* does not stand for the proposition that such warrants always break the chain of causation between an unconstitutional detention and the seizure of evidence pursuant to a search incident to arrest, rendering the exclusionary rule categorically inapplicable. However, *Strieff*'s holding and reasoning support the conclusion that, under the Fourth Amendment, the exclusionary rule does not apply to the evidence seized from Defendant. The *Strieff* analysis of the three factors pertinent to the attenuation determination, 136 S. Ct. at 2062-63, dictates our analysis here.

**{5}**      Here, as in *Strieff*, the first factor—the time between the detention and the search—weighs in favor of suppression.  *See id.* at 2062. Defendant asserts that these events occurred "in a matter of minutes," which the State does not dispute. The sequence of events appears consistent with Defendant's assertion, and we have no basis to conclude that "substantial time elapse[d] between [the detention] and when the evidence [was] obtained." *Id.*  Accordingly, without additional information pertinent to this factor, we treat it as favoring suppression. *See Edwards*, 2019-NMCA-070, ¶ 11 ("Because we lack information that would assist us in determining [the first attenuation test] factor, we conclude that it favors suppression.").

**{6}**      However, in both cases "the second factor, the presence of intervening circumstances, strongly favors the State." *Strieff*, 136 S. Ct. at 2062. This is because the officer in each case discovered a valid warrant that "predated [the officer's] investigation[]" and "was entirely unconnected with the stop[,]" and upon discovering the warrant, the officer "had an obligation to arrest [the defendant]." *Id.* at 2062*; accord Edwards*, 2019-NMCA-070, ¶ 12. The officer in each case was then permitted to conduct a search incident to arrest. *Strieff*, 136 S. Ct. at 2063.

**{7}**      *Strieff* also compels us to conclude that the third factor weighs in favor of applying the attenuation doctrine and against suppression. Defendant has not persuaded us that the officer who searched him engaged in "police misconduct" that was "purposeful or flagrant." *Id.* "For the violation to be flagrant, more severe police misconduct is required than the mere absence of proper cause for the seizure." *Id.* at 2064. Defendant argues that the officer "should have known that he did not have

reasonable suspicion to stop [Defendant]." Even if Defendant is correct, whether the officer should have known—i.e., whether the officer was negligent—is not the Fourth Amendment standard. The United States Supreme Court has concluded that conduct that "was at most negligent" and based on "errors in judgment" does not suffice. *Id.* at 2063. In Defendant's case, having assumed the detention was unjustified, we conclude that the officer detained Defendant based on errors in judgment about whether the facts amounted to reasonable suspicion. If the officer lacked reasonable suspicion, it was because he misjudged (1) the value of the information he had about the prevalence of burglaries in the location where he encountered Defendant and at the time of day when the encounter occurred and (2) the appropriate level of suspicion associated with his observations of Defendant, including his walking on the lawn of a residence and then in between two residences in the wee hours of the morning wearing a backpack and dark clothing. The United States Supreme Court has held that such errors "hardly rise to a purposeful or flagrant violation of [a defendant's] Fourth Amendment rights." *Id.*

**{8}** When we consider all three factors together, we conclude, as the United States Supreme Court did in *Strieff* and as we did in *Edwards,* that the exclusionary rule does not apply. Only one of the factors weighs in favor of suppression, and the other two weigh against suppression, one of them heavily. We therefore hold that the pre-existing arrest warrant broke the chain of causation, attenuating the connection between Defendant's detention and the discovery of the evidence. Accordingly, the Fourth Amendment did not require the district court to suppress the evidence.

## 2.      Article II, Section 10 of the New Mexico Constitution

**{9}** Defendant contends that we should reach a different conclusion under Article II, Section 10 of the New Mexico Constitution. Defendant's argument in support of this contention and the State's response raise questions that neither the New Mexico Supreme Court nor this Court has decided regarding arrest warrants and the attenuation doctrine: (1) whether a valid, pre-existing, untainted arrest warrant may ever constitute an intervening cause that breaks the chain of causation under Article II, Section 10 and (2) if so, whether our state constitutional analysis on this particular attenuation issue should track the Fourth Amendment analysis. However, we need not reach those questions to decide Defendant's appeal because, bound by New Mexico Supreme Court precedent, we conclude that the crimes Defendant committed after the officer detained him broke the chain of causation.

**{10}** In *State v. Tapia*, 2018-NMSC-017, ¶¶ 43-49, 414 P.3d 332, our Supreme Court adopted into state constitutional jurisprudence what is often referred to as the "new crimes doctrine," under which crimes that a person commits after he has been unlawfully detained may serve as intervening events that break the chain of causation. The Court rejected the argument that federal attenuation analysis is flawed in the context of new crimes, concluding that the three-part test described in *Strieff* applies when a person commits new crimes after being detained unconstitutionally. *Id.* ¶ 47. The Court explained that a violation of a person's constitutional rights "does not confer

upon [that person] a license to commit new crimes, whether they be physical resistance or more passive forms of resistance to government authority." *Id.* ¶ 48.

**{11}** Under *Tapia*, the new crimes doctrine applies here because Defendant was convicted of evading or resisting a peace officer and assaulting a peace officer based on his conduct *after* the officer detained him but *before* the officer conducted the search that revealed the methamphetamine and paraphernalia. Accordingly, to determine whether suppression is appropriate, *Tapia* requires us to rely on the three-part test that the United States Supreme Court used in *Strieff*. That test yields the same result for Defendant's new crimes that it yielded for his arrest warrant. Because the analysis is identical, we need not repeat it. The first factor weighs in favor of suppression, but the second weighs heavily against suppression, and the third weighs against suppression. We therefore hold, in accordance with *Tapia*, that the exclusionary rule does not apply here pursuant to the new crimes doctrine.

**{12}** Defendant contends that the new crimes doctrine should only allow admission of the evidence of the new crimes themselves—resisting or evading an officer and assault on an officer—and that the drugs and paraphernalia that the officer seized after the new crimes were committed must be suppressed. We disagree. After Defendant committed the new crimes, the officer had the authority to arrest him and search him incident to arrest without running afoul of Article II, Section 10. *See State v. Gutierrez*, 2004-NMCA-081, ¶ 11, 136 N.M. 18, 94 P.3d 18 (recognizing that searches incident to arrest are permissible under Article II, Section 10). The officer conducted such a search and discovered drugs and paraphernalia. We therefore conclude, based on the arguments presented, that the evidence should not be suppressed because its seizure was attenuated from the detention.

For these reasons, Article II, Section 10 does not require suppression of the drugs and paraphernalia seized from Defendant after he committed new crimes.

## II.    Defendant's Convictions for Possession of Drugs and Possession of Drug Paraphernalia Violate Principles of Double Jeopardy

**{13}** Defendant argues that his conviction for possession of methamphetamine and his conviction for possessing drug paraphernalia violate double jeopardy principles. Specifically, Defendant argues that, under *State v. Almeida*, 2008-NMCA-068, 144 N.M. 235, 185 P.3d 1085, he may not be convicted of both offenses based on his unitary act of possessing cigarettes that contained methamphetamine. Reviewing this issue de novo, *id.* ¶ 4, under our ordinary methodology for double description claims, *id.* ¶ 6, we agree.

**{14}** In *Almeida*, Defendant made a double jeopardy challenge to his convictions for possessing methamphetamine and possessing drug paraphernalia, specifically the plastic baggie in which the methamphetamine was stored. *Id.* ¶¶ 2-3. We concluded that (1) Defendant's conduct in possessing the baggie and the methamphetamine was unitary, *id.* ¶ 7; and (2) the Legislature did not intend "to punish separately the

possession of a controlled substance and the possession of paraphernalia if a container only becomes paraphernalia when it is used to hold the personal supply of the person charged with possession of the controlled substance." *Id.* ¶ 18. In support of the second conclusion, we explained that "when the drug paraphernalia consists of a common, everyday item and when that paraphernalia is only identifiable as such because it is a container for a personal supply of a controlled substance, we do not believe the [L]egislature intended pyramid penalties for the single act of possession of drugs." *Id.* ¶ 20. We therefore held that principles of double jeopardy prohibited the defendant from being convicted of both drug possession and paraphernalia possession, and we vacated his paraphernalia conviction. *Id.* ¶¶ 21, 23.

**{15}** Defendant's case is analogous to *Almeida*. Both cases involve convictions for possession of drugs and possession of paraphernalia based on possession of methamphetamine stored in common, everyday items—in *Almeida*, a baggie, and in Defendant's case, cigarettes.[4] Like the baggie in *Almeida*, the cigarettes in this case fit the statutory definition of paraphernalia only because they served as containers for the methamphetamine. *See* NMSA 1978 § 30-31-2(V)(10) (2009, amended 2019)[5] (defining paraphernalia to include, among other items, "containers and other objects used, intended for use or designed for use in storing or concealing controlled substances or controlled substance analogs"). It follows that Defendant's possession of cigarettes containing methamphetamine was unitary conduct that the Legislature did not intend to punish under two separate statutes.

**{16}** The State asks us to distinguish Defendant's case from *Almeida*, asserting that the cigarettes "were altered specifically to store and conceal the controlled substance[]" and were "being used outside the scope of their common purpose." The State has not cited any authority to support its argument, and we assume no such authority exists. *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. Nor has the State adequately developed any argument that the factual distinctions it draws with respect to the cigarettes have any legal significance here. We decline to develop such an argument for the State and therefore reject its invitation to distinguish *Almeida*. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, [we] would have to develop the arguments [ourselves], effectively performing the parties' work for them. This creates a strain on judicial resources and a substantial risk of error. It is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments." (citation omitted)).

---

4The jury instruction included alternative bases for the paraphernalia conviction: that "Defendant possessed syringes, a rubber band or cigarettes." But the jury returned a general verdict, and "[t]he double jeopardy clause requires a conviction under a general verdict to be reversed if one of the alternative bases for conviction provided in the jury instructions is 'legally inadequate' because it violates a defendant's constitutional right to be free from double jeopardy." *Kersey v. Hatch*, 2010-NMSC-020, ¶ 12, 148 N.M. 381, 237 P.3d 683 (internal quotation marks and citation omitted). Because one of the bases for Defendant's conviction—possession of cigarettes—is legally inadequate, the conviction cannot stand.

5All references to Section 30-31-2(V) are to the 2009 version, which was in effect in 2015 when Defendant was charged.

**{17}** Because we conclude, based on the arguments presented here, that principles of double jeopardy prohibit Defendant from being convicted and punished for possessing both drugs and paraphernalia, the district court must vacate Defendant's conviction for possessing paraphernalia and his sentence for that crime.

**CONCLUSION**

**{18}** We reverse Defendant's conviction for possession of paraphernalia and remand to the district court to vacate that conviction and resentence Defendant accordingly. We affirm in all other respects.

**{19}   IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**